Day, J.
A number of questions are made in argument, but the conclusion to which we have arrived on one is decisive of the case. Had the Miami Coal Company power or authority to make the appropriation sought by it? Clearly not, unless such authority has been conferred upon it by the legislative power of the State. This company is a corporation deriving its powers from “ an act supplementary to the act entitled ‘ an act to provide for the creation and regulation of incorporated companies in the State of Ohio,’ passed May 1, 1852.” The act was passed April 8, 1856 S. & O. Stat. 344. Among the various purposes for which corporations may be formed under this act, that of “ mining coál, ores, and other minerals ” is one. The act authorizes the “ carrying on business usually connected with the main *566 objects of the corporations.” It also provides, in the first section, that such corporations, “when organized, shall be a body corporate, having all the privileges, immunities, and powers conferred upon manufacturing companies by said act, and shall be governed in all respects by the provisions of said act [the act of 1852], and the acts supplementary and amendatory thereto.” The third section of the act of 1856 is as follows:
“ The several companies which may be organized under the provisions of this act, for the purpose of mining, quarrying, or manufacturing, shall be authorized, when such purpose shall be stated in the certificate of organization, to construct a railroad, with a single or double track, with such side tracks, turn-outs, offices, and depots, as they may deem necessary to carry out the objects of the incorporation, from any such mine, quarry, or manufactory, to any other railroad, or any canal, slack-water navigation, or other navigable water or place within or upon the borders of this State; and shall, in respect to such railroad, be subject to and governed by the act aforesaid, and the said supplementary, amendatory, and other acts in relation to railroads, so far as applicable thereto.”
The 10th section of the act of 1852 provides, “ in relation to railroads,” that “ such corporation is authorized to enter upon any land for the purpose of examining and surveying its railroad line, and may appropriate so much thereof as may be deemed necessary for its railroad,” etc. The act contains a great number of provisions in relation to the construction- and management of railroads. Does the act of April 8, 1856, confer upon this corporation the same authority to appropriate lands for a railroad that is expressly conferred upon railroad corporations organized under the act of 1852 ?
In deciding this question, it must be kept in mind, as a fundamental principle, held and clearly stated in Currier v. Marietta & Cincinnati R. R. Co. (11 Ohio St. 231), “ that grants of corporate power, being in derogation of common right, are to be strictly construed; and this is especially the case where the power claimed is a delegation of the right of eminent domain, one of the highest powers of sovereignty *567 pertaining to the State itself, and interfering most seriously and often vexatiously with the ordinary rights of property.”
It is claimed that the same right of appropriating land for a railroad, which is granted to railroad companies under the act of 1852, is conferred, by the third section of the act of 1856,upon corporations organized “for the purpose of mining, quarrying, or manufacturing.” This section does confer upon such companies the authority to build railroads, which is an addition to the powers conferred by the preceding sections. But is anything more conferred than the mere power to construct a railroad in the manner defined in the section % It is claimed that, in addition to the power to construct a railroad, the concluding clause of the section confers the right of appropriating land. The literal reading of the clause only subjects the company, in respect to its railroad, to be governed by the “ acts in relation to railroads, so far as applicable thereto.” There is no express grant of authority to condemn land in the clause, nor does it expressly confer upon such corporations the powers and privileges granted by law to railroad corporations. The grant of the power in question can only be inferred from the language of the last clause of the third section of the act of 1856. But this power cannot be derived by intendment or inference. Cooley’s Const. Lim. 530. The only manifest purpose of this clause is to subject the company, in respect to its railroad, to the governing provisions of the acts in relation to railroads; it evinces no purpose to confer additional powers.
The strict meaning of this clause is rendered clear by comparing it with the last clause of the first section of the same act. It is there provided that the corporation, “ when organized, shall be a body corporate, having all the privileges, immunities, and powers conferred upon manufacturing companies by said act, and shall be governed in all respects by the provisions of said act, and the acts supplementary and amendatory thereto.”
Here it will be seen that the legislature plainly distinguishes the provisions of the act conferring powers upon the corporation, from those governing the exercise of such powers. *568 The language used in the last clause of the third section is substantially, only that which is used in the first section, to subject the company to the government provided in the acts ref erred to in each section. If the legislature intended by the thii’d section to confer on these companies the powers enjoyed by railroad corporations, why was it not done, in as explicit terms, as it is in the first section, in relation to the powers of manufacturing corporations ? We think that if such had been the legislative intent, it would have been as clearly expressed in the one case as in the other. The language used in the third section, requiring such companies to be governed by the acts in relation to railroads, has no broader significance than that of like language in the first section; and, therefore, since the language used in the first section to confer power, is omitted in the third, a negative, rather than an affirmative, intent to confer additional power is indicated. But, however this may be, under a rule requiring a strict construction we are constrained to hold, that the act in question does not confer upon the corporation, plaintiff in this case, the power to appropriate property to its use, against the will of the owner.
This construction is strengthened by the fact, that there can be no pretence of a grant of power in the act for the appropriation of property to the use' of a company that may be organized “ for the purpose of constructing and maintaining a canal or canals for hydraulic purposes ; ” yet, a.corporation for that purpose is expressly authorized by the act; and it would seem that the necessity for- the exercise of the right of condemnation might be as essential for the canal of such a corporation as for the railroad of a mining corporation.
Since, then, the plaintiff had no right to appropriate the land of the defendant, the probate court erred in overruling the motion of the defendant to dismiss the proceeding for that purpose. It follows that the judgment of the common pleas, reversing that of the probate court, was right, and must be affirmed.
Brinkerhoff, C.J., and Scott, Welch, and White, JJ., concurred.